**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MISC. NO.:**

**SECURITIES AND EXCHANGE**
**COMMISSION,**

      **Applicant,**

v.

**BRANDON CHARNAS,**

      **Respondent.**

_____/

**SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR**
**AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE**
**WITH ADMINISTRATIVE SUBPOENA**
**AND INCORPORATED MEMORANDUM OF LAW**

Russell Koonin
Senior Trial Counsel
Michael J. Gonzalez
Senior Counsel
Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300

### TABLE OF CONTENTS

**I. FACTUAL BACKGROUND** ................................................................. 1

   A. The Commission's Authority for its Investigation ................................. 1

   B.  The Commission's Reason for its Investigation ................................... 3

   C. Charnas Met and Communicated Frequently with Other ODP Traders

      Who Engaged in Similar Trading of ODP ......................................... 6

   D. Charnas' use of his Cell Phone to Communicate with Similarly Situated ODP Traders .... 7

   E. The Commission's Subpoena, Meet and Conferral, and Respondent's Continued

      Failure to Comply .................................................................. 8

      *i. The Subpoena to Respondent* ............................................... 8

      *ii. Meet and Conferral* ........................................................ 9

      *iii. Continued Refusal to Comply with Subpoena* ......................... 11

**II. MEMORANDUM OF LAW** ................................................................ 11

   A. The Court Has Jurisdiction and Venue Properly Lies In This District ............ 11

   B. The Court Should Conduct a Summary Proceeding ............................... 13

   C. The Commission's Subpoenas Satisfy All Requirements for Enforcement ...... 13

      *i. The Commission's Purpose is Lawful* .................................... 14

      *ii. The Commission Seeks Relevant Information* ........................... 15

      *iii. Charnas Possesses Information the Commission Lacks* ............... 16

      *iv. The Commission Has Satisfied All Necessary Administrative Steps* .......... 16

   D. Respondent Cannot Show the Subpoena is Unreasonable ....................... 16

      *i. Act of Production Doctrine is Limited* ................................... 17

         *a.   The Existence of Charnas' Cell phone Messages is a Foregone Conclusion* ..... 18

         *b.   Revised Request No. 3 is Specific* .................................... 19

**III. CONCLUSION** ........................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Brown v. Caldwell,* 2022 WL 2753243 (D. N.J. Jul. 14, 2022) ...................................................... 19

*EEOC v. Technocrest Sys.,* 448 F.3d 1035 (8th Cir. 2006) ........................................................... 14

*EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449 (11th Cir. 1996) ........................................................... 13

*Fisher v. United States,* 425 U.S. 391 (1976) ............................................................................... 18

*FTC v. PointBreak Media, LLC,* 343 F.Supp.3d 1282 (S.D. Fla. 2018) ........................................ 19

*In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011,* 670 F.3d 1335 (11th Cir. 2012)

    ................................................................................................................................... 17, 18

*RNR Enterprises, Inc. v. SEC,* 122 F.3d 93 (2d Cir. 1997) ..................................................... 14, 16

*Sallah v. Worldwide Clearing, LLC,* 855 F.Supp.2d 1364 (S.D. Fla. 2012) ......................... 17, 20

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978) ..................................................... 15

*SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047 (2d Cir.1973) ....................................... 14, 17

*SEC v. Caramadre*, 717 F. Supp. 2d 217 (D.R.I. 2010) ............................................................... 17

*SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.,* 2022 WL 1288749 18

*SEC v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) ............................................... 12, 15

*SEC v. Howatt*, 525 F.2d 226 (1st Cir. 1975) ............................................................................... 14

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ........................................................ 12, 15, 16

*SEC v. Kimmel,* 2020 WL 2800813 (D. Colo. May 29, 2020) ..................................................... 17

*SEC v. Marin,* 982 F.3d 1341 (11th Cir. 2020) ................................................................ 13, 14, 16

*SEC v. Sprecher*, 594 F.2d 317 (2d Cir. 1979) ............................................................................ 13

*State of Florida ex rel. Butterworth v. Southland Corp.*, 684 F. Supp. 292 (S.D. Fla. 1988) ...... 17

*United States v. Elmes*, 532 F. 3d 1138 (11th Cir. 2008) ............................................................. 13

*United States v. Florida Azalea Specialists*, 19 F.3d 620 (11th Cir. 1994) ................................. 15

*United States v. Hubbell,* 530 U.S. 27 (2000) .............................................................................. 18

*United States v. Ponds,* 454 F.3d 314 (D.C. Cir. 2006) ............................................................... 19

*United States v. Powell*, 379 U.S. 48 (1964) ............................................................................... 14

*United States v. Teeple,* 286 F.3d 1047 (8th Cir. 2002) ............................................................... 19

### STATUTES

Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a) ................................................................ 14

Section 21(b) of the Exchange Act, 15 U.S.C. §78u(b) ................................................................ 15

Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c) ......................................................... 12, 13

Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b)............................. 11, 14

Applicant Securities and Exchange Commission (the **"Commission"**) applies for an order to show cause and for an order compelling Respondent Brandon Charnas (**"Charnas"**) to comply with the subpoena, issued to Charnas on November 3, 2022, as modified on April 19, 2023 (**"Subpoena"**).  Charnas has improperly refused to comply with the Subpoena under the auspices of the Fifth Amendment's act of production doctrine.

However, the doctrine is not applicable here given that the Commission can show, with reasonable particularly, that it knows of the existence of the communications it seeks, the Subpoena is exacting in its request, and it does not require Charnas to exercise any judgment or discretion in responding to it.  Therefore, Respondent must comply with the Subpoena or explain to the Court why he should not be held in contempt for his failure to comply.  In support of this application, the Commission states as follows:

## I. FACTUAL BACKGROUND

### A. The Commission's Authority for its Investigation

1.      The Commission has been investigating potential insider trading in the securities of The ODP Corporation (**"ODP"**) d/b/a Office Depot, a Delaware corporation headquartered in Boca Raton, Florida (**"Investigation"**).  [Declaration of Commission Attorney Michael J. Gonzalez, dated July 24, 2023. [(**"Ex. A"**), ¶ 2].  ODP's common stock is registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**). [*Id.*].  ODP's common stock trades on the NASDAQ under the symbol ODP and its options trade

on the Chicago Board Options Exchange, Boston Options Exchange, New York Stock Exchange Arca[1] and the International Securities Exchange. [*Id.*].

2.      The Commission has issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony (**"Formal Order"**) in the Matter of Trading in the Securities of The ODP Corporation, FL-4276. [*Id.*, ¶ 3].

3.      Under the Formal Order, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. [*Id.*, ¶ 4]. All authorized staff are employed at the Miami Regional Office of the SEC. [*Id.*]

4.      The Formal Order directs the Commission's staff to conduct a private investigation to determine whether persons or entities have engaged in the enumerated potential violations of the antifraud provisions of the federal securities laws, specifically, violations of Section 17(a) of the Securities Act of 1933 (**"Securities Act"**) and Section 10(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**) and Rule 10b-5 thereunder. [*Id.*, ¶ 5] (collectively the **"anti-fraud provisions"**). The Investigation focuses on whether, in violation of the anti-fraud provisions of the federal securities laws and invocation of the federal courts' jurisdiction of these provisions, persons or entities may have traded in the securities of ODP on the basis of material nonpublic information, or disclosed to others material nonpublic information regarding ODP in breach of a fiduciary duty or other duty arising out of a relationship of trust and confidence. [*Id.*].

---

[1] The New York Stock Exchange (**"NYSE"**) Arca was formed in 2006 after the NYSE acquired Archipelago, an electronic exchange network. NYSE Arca differs from the NYSE in that the NYSE is a physical and electronic stock exchange, while NYSE Arca is an electronic communications network used for matching orders.

B. **The Commission's Reason for its Investigation**

5.      The Commission has information that tends to show that from at least August 4, 2020, individuals and/or entities may have violated the anti-fraud provisions of the federal securities laws based on insider trading in the securities of ODP. [*Id.,* ¶ 6].

6.      On December 14, 2020, Charnas began trading in ODP by purchasing 2,100 shares through his Robinhood Securities, LLC ("Robinhood") account, which he opened in March of 2020.  [Declaration of Market Surveillance Specialist Robert Nesbitt, dated July 24, 2023. [(**"Ex. B"**), ¶ 4].  He continued to purchase securities in ODP through December 31, 2020.  [*Id.*].

7.      On Monday, January 11, 2021, USR Parent, Inc. d/b/a Staples (**"Staples"**) publicly announced, before the NASDAQ market opened that day, that it had sent a letter to ODP proposing to acquire ODP for $40 per share in cash (**"Staples' Acquisition Offer"**).  [**Ex. A**., ¶ 8].  ODP's stock price had closed at $36.96 on the previous Friday, January 8, 2021.  [*Id.*].

8.      Throughout mid-December 2020 and through the date of the Staples' Acquisition Offer, Charnas purchased ODP stock and options while communicating frequently with multiple other individuals who traded ODP options and/or common stock.  They communicated via text message, iMessage, and/or WhatsApp, (**"Cell phone Messages"**)[2] as well as emails and telephone calls.  [*Id.,* ¶ 9].  The timing of Charnas' trading and communications activity with other traders ramped up in advance of the Staples' Acquisition Offer, specifically the last two weeks of December 2020 when Staples was preparing to publicly approach ODP with an offer in the coming weeks, but had not made a public announcement.  [*Id.*].

---

[2] "Text messages" are standard SMS/MMS messages; iMessages are messages sent to and from Apple's own instant messaging service; and WhatsApp is a popular cell phone messaging service owned by Meta Platforms, Inc., (formerly named Facebook, Inc.).

9.     The staff's investigation has uncovered that Charnas' trading activity not only coincided with frequent communications with other traders who made significant profits by purchasing ODP options and common stock just prior to the Staples' Acquisition Offer, but at times, Charnas traded while meeting with them in person to discuss ODP.  [*Id.,* ¶ 10].  By way of example, on December 23, 2020, information obtained by the staff shows that Charnas communicated via Cell phone Message with Trader 1, who Charnas invited to a 1:00 p.m. lunch in Miami, Florida that day with him and also Trader 2 to discuss ODP.  [*Id.*]  During (or immediately thereafter) this lunch, at 2:21 p.m. Charnas both placed and executed trades in 200 out-of-the-money call options contracts of ODP.  The call options cost Charnas $31,000.  [*Id.*].

10.     Each call option is a contract giving the purchaser the right (but not the obligation), to buy 100 shares of a security at a fixed price within a specific period of time.  [Ex. B, ¶ 6].  The end of the time period is the expiration date.  [*Id.*].  The fixed price set in the call option contract is called the strike price.  [*Id.*].  A call option is "out-of-the-money" if the underlying price is trading below the strike price of the call.  [*Id.*]. Therefore, the purchaser of the out-of-the-money call option is betting that the underlying price of the stock will <u>increase</u>.  [*Id.*].

11.     The 200 out-of-the-money call option contracts that Charnas bought on December 23, 2020 had a strike price of $36 per share of ODP common stock and an expiration date of April 16, 2021.  [*Id.,* ¶ 7].  The 200 call options gave Charnas the right to buy 20,000 shares of ODP common stock for $36 per share on any date on or before April 16, 2021.  [*Id.*].  On December 23, 2020, ODP common stock opened the trading day with a stock price of $28.67 per share and at the end of the trading day was stock price at $28.51 per share.  [*Id.*].

12.     Purchasing out-of-the money call options is a risk given that the call options could expire worthless.  [*Id.*, ¶ 8].  Specifically, if Charnas held the call option contracts that he bought

on December 23, 2020 to maturity on April 16, 2021 and the price of ODP's common stock did not rise more than 25.5% (from $28.67 to $36 per share), the call options would expire worthless. [*Id.*]. This expiration would result in not only Charnas' failure to profit, but would also result in a complete loss of the amount he paid for the ODP call options, here the $31,000. [*Id.*].

13.    ODP option volume was not very active in the months prior to January 2021. [*Id.,* ¶ 9]. The call options that Charnas bought on December 23, 2020 constituted *100%* of ODP call options with a strike price of $36 and an expiration of April 16, 2021 purchased that day and *90.09%* of overall volume of all ODP's call option contract trading for that day. [*Id.*].

14.    Further, Charnas was the sole purchaser of ODP call option series with a strike price of $36 and an expiration of April 16, 2021 prior to the date that Staple's Acquisition Offer was announced on January 11, 2021. [*Id.,* ¶ 10].

15.    On January 12, 2021, the day after Staples' Acquisition Offer, ODP closed at $45.90 per share that day and Charnas sold half of the call option contracts he purchased on December 23, 2020 for approximately $114,000. [*Id.,* ¶ 11]. Charnas' call option sales on January 12, 2021 resulted in a 635% return on investment for a security that he held for only 20 days. [*Id.*]. Charnas sold the other half of the call option contracts on April 16, 2021 for approximately $63,200, representing a 307% return on investment. [*Id.*]. ODP closed at $42.67 per share that day. [*Id.*]. Hence, all told, Charnas made a profit of approximately $146,200 from his ODP call option contract trading. [*Id.*].

16.    Starting on December 14, 2020 and ending on December 31, 2020, Charnas also bought 16,110 ODP shares for $458,158 and sold 500 ODP shares for $13,899 resulting in net purchase of 15,598 shares of ODP common stock for $444,807.57. [*Id.,* ¶ 12]. Charnas paid prices ranging from $26.89 to $29.39 per share for the stock purchases. [*Id.*]. After the Staples'

Acquisition Offer of $40 per ODP share was made public on January 11, 2021, Charnas started selling ODP common stock on January 11, 2021 and finished selling all the ODP shares on February 12, 2021. [*Id.*]. Charnas sold the shares at prices ranging from $42.15 to $47 per ODP share, and made profits from these sales. [*Id.*].

17.     Charnas' trading in both stock and options resulted in him generating combined profits of at least $385,000. [*Id., ¶* 13].

### C.  Charnas Met and Communicated Frequently with Other ODP Traders Who Engaged in Similar Trading of ODP

18.     Charnas met and repeatedly communicated via Cell phone Message with Trader 1. [Ex. A*, ¶* 11]. Trader 1 bought two separate series of ODP call option contracts on December 28, 2020, one series with a strike price of $32 per ODP share and the other with a strike price of $35 per ODP share. [Ex. B., ¶ 14]. Trader 1 spent $199,131 on these call option contracts on December 28, 2020. [*Id.*]. Trader 1's purchases of the $32 strike price call options on December 28, 2020 represented about 93% of the series trade volume. [*Id.*]. Trader 1's purchases of the $35 strike price call options on December 28, 2020 represented 100% of the series trade volume. [*Id.*]. Trader 1's options purchases represented in total approximately 80% of the call options purchases on December 28, 2020. Trader 1 also bought $48,806 of two separate series of ODP call option contracts on January 4, 2021, also with strike prices of $32 and $35 per ODP share. [*Id.*]

19.     After the Staples' Acquisition Offer of $40 per ODP share was made on January 11, 2021, Trader 1 sold all of the call option contracts for $438,455 which resulted in a profit of $190,517. [*Id., ¶* 15]. This represents a return on investment of 76.8% that Trader 1 only held between 8 and 13 days total. [*Id.*] Starting on December 28, 2020 and ending on January 8, 2021, Trader 1 also bought 32,800 shares of ODP common stock for approximately $1.1 million. [*Id.*].

D. **Charnas' use of his Cell Phone to Communicate with Similarly Situated ODP Traders**

20.    Through its investigation, the Commission's staff has obtained certain Cell phone Messages where Charnas communicated and discussed trades in ODP securities with other traders who traded in and profited from the sale of ODP securities. [Ex. A., ¶ 11].  For example, Charnas connected and introduced Traders 2 and 3 on December 22, 2023, specifically focusing their attention on ODP and another investment.  [*Id.*].  Later, on February 23, 2021, Charnas shared a screenshot of his Robinhood trading account with several traders the staff has identified in its investigation who participated in suspicious trading of ODP equities and options, where Charnas shared the price of ODP on February 23, 2021 reflecting ODP's appreciation in value since initial discussions with fellow traders began the previous year.  [*Id.*].

21.    Yet, while the staff has received certain Cell phones Messages from certain individuals during the course of its investigation, the staff has a good-faith reason to believe, through its investigation, that Charnas possesses additional Cell phone Messages that are not in the staff's possession.  [*Id., ¶* 12.].  This belief includes the staff's possession of telephone call logs indicating frequent conversations between Charnas and other individuals who traded in ODP securities in similarly suspicious trades as Charnas, including at key moments leading to Staples' Acquisition Offer and thereafter.  [*Id.*]. Further, in a recent sworn testimony, Trader 6 indicated that Charnas was well aware of the staff's Subpoena and that Charnas told him he was compiling responsive communications, including from his cell phone as well as email account, in response to the Subpoena. [*Id.*]

22.    Obtaining communications between potential tippers and tippees is critical to determine whether material nonpublic information was disseminated between individuals, which

in turn gives them an unfair advantage in the market and inured to their financial benefit. [*Id.,* ¶ 13].

E. **The Commission's Subpoena, Meet and Conferral, and Respondent's Continued Failure to Comply**

   i. *The Subpoena to Respondent*

23.     As part of the Investigation and pursuant to the Formal Order, on November 3, 2022, the Commission issued a preservation letter and the Subpoena to Charnas.  It required the production of the requested documents, itemized numbers 1 through 9, by November 24, 2022. [*Id., ¶ 14*]. The relevant time period of the Subpoena for responsive information was August 1, 2020 through November 3, 2022 (**"Relevant Period"**).  [*Id.*].  The Subpoena requested items 1 through 9, which were:

   1. Documents sufficient to identify the Charnas Accounts;

   2. All account statements for all brokerage accounts (includes any account in which any trading of securities occurred) identified in Request #1, above;

   3. All Documents (including, but not limited to, correspondence, e-mails and notes of conversations) Concerning Communications between you and any Person Concerning "ODP" or "Office Depot";

   4. All Communications with any brokerage at which you had an account in Request # 2.

   5. All Documents Concerning trading in the securities of ODP;

   6. All credit card statements for credit cards that were or are in your name, and/or over which you have direct or indirect control;

   7. Documents sufficient to disclose all telephone numbers and calling card numbers in your name or which you regularly used during the Relevant Period, including, but not limited to, all telephone numbers at your residences (regardless of whose names they are listed under), all cell phone and facsimile numbers, and all work-related telephone numbers used by you;

8. Documents sufficient to identify all e-mail, text messaging and instant messaging accounts you used, controlled, managed, maintained or opened at any time during the Relevant Period;

9. All telephone bills and statements for all phone numbers identified in Request # 8 above.

Included in the definitions section of the Subpoena were the following definitions:

1. "ODP Corporation" means the entity doing business under the name "ODP" a/k/a "Office Depot" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

7. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

[*Id.*].  The Subpoena also required Charnas to appear before officers of the Commission via video teleconference on WebEx for sworn testimony on November 17, 2022 at 9:30 a.m. [*Id.*].

## ii. *Meet and Conferral*

24.     The subpoena was issued on November 3, 2022 and was delivered to Charnas on November 9, 2022.  [*Id.* ¶ 15].  Charnas' counsel contacted the staff on November 16, 2022,

indicating he had been retained and requested an adjournment of the testimony so he could assess the Subpoena.  [*Id.*].

25.     On January 24, 2023, Commission staff inquired of Charnas' counsel as to the status of Charnas' expected production.  [*Id.,* ¶ 16].  Counsel responded the following day saying that he needed until the following week to get back to the staff to discuss Charnas' Subpoena response.  [*Id.*].  The staff once again provided an extension and Charnas' counsel agreed to contact the staff on January 31, 2023.  [*Id.*].

26.     Having not heard from Charnas' counsel and extending him additional professional courtesies, the staff again reached out on February 3, 2023 to inquire as to the status of the response to the Subpoena. [*Id.,* ¶ 17].

27.     The staff then spoke to Charnas' counsel on February 6, 2023 whereupon counsel informed that Charnas would be invoking his Fifth Amendment rights as to sworn testimony when it occurs and as well in response to any (and all) documents and communications called on to be produced pursuant to the Subpoena. [*Id.,* ¶ 18].  Charnas' counsel did not thereafter provide a formal written affirmation of his verbal assertions. [*Id.*].

28.     On April 17, 2023, the staff requested that Charnas' counsel provide a formal response to the Subpoena and requested a privilege log be produced.  [*Id.,* ¶ 19].  Later that same day on April 17, 2023, Charnas' counsel reiterated via email that his client would be invoking his Fifth Amendment rights regarding any response to the November 3, 2022 Subpoena.  [*Id.*].

29.     The staff responded to Charnas' counsel on April 19, 2023, and explained that Charnas' written communications related to ODP contained within his cell phone were not subject to constitutional protection because staff is aware of the existence of those communications with reasonable particularity and the location of the communications—Charnas' cell phone.  [*Id.,* ¶ 20].

The staff made it abundantly clear that, without waiving any rights, it only sought Charnas' cell phone communications relating to ODP during the Relevant Period.  [*Id.*].

30.     Nonetheless, in an abundance of caution, and for the avoidance of doubt, and in light of the potential expansive definitions of "Documents" and "Communications" in the Subpoena, the staff amended Request No. 3 as follows:

3. [Provide] all text messages, iMessages, and WhatsApp messages (collectively **"Cell phone Messages"**) between You and any Person Concerning "ODP" or "Office Depot." (**"Revised Subpoena Request No. 3"**)

[Id., ¶ 21].

### iii. Continued Refusal to Comply with Subpoena

31.     In late April and early May 2023, the parties exchanged email communications asserting their positions.  [*Id.,* ¶ 22].  This exchange was followed by a meet and confer telephone call on May 1, 2023 in a final attempt to resolve the disagreement.  [*Id.*].  A resolution could not be reached.  [*Id.*].  Counsel continues to assert the Fifth Amendment on behalf of Charnas with respect to Revised Subpoena Request No. 3. [*Id.*].

32.     Given the staff's knowledge, with reasonable particularly, of the existence of some of these communications Charnas had during the Relevant Period with other ODP traders via Cell phone Messages, the Commission thus seeks Court intervention to obtain them from Charnas. [*Id.,* ¶ 23].

## II. <u>MEMORANDUM OF LAW</u>

### A. <u>The Court Has Jurisdiction and Venue Properly Lies In This District</u>

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations.  *See, e.g*., Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b) ("For the purpose of any such investigation, or any other proceeding under this chapter, any member of the Commission or any

officer designated by it is empowered to…require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry."); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

When parties refuse to comply with lawful Commission demands for documents and testimony issued pursuant to the Commission's broad statutory authority to investigate, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling production or testimony.  "In case of…refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records."  Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).  That language also provides that venue lies in the Southern District of Florida, as it provides the Commission may seek a court order "within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business…." *Id*.

Here, venue is proper in this district because the investigation is being carried on in the Southern District of Florida, nonpublic information may have been misappropriated from ODP, which is headquartered in Boca Raton, FL, and all authorized staff in the Formal Order are

employed at the Miami Regional Office of the SEC.  [Ex. A., ¶ 4].  There is personal jurisdiction

over Charnas because Charnas' company, Current Real Estate Advisors, LLC, is located in Miami-

Dade County within the Southern District of Florida, [*Id.*, ¶ 10], and, based upon information and

belief, Charnas met with multiple people on multiple occasions in this district, including in Miami-

Dade County, who traded in ODP during the Relevant Period. [*Id.*, ¶¶ 9, 10, and 11].

### B. The Court Should Conduct a Summary Proceeding

Subpoena enforcement actions are generally summary in nature and the Court may

therefore hear them in summary fashion without strict adherence to the Federal Rules of Civil

Procedure.  *United States v. Elmes*, 532 F. 3d 1138, 1142 (11th Cir. 2008) ("This court has

described the scope of Rule 81(a)(3) in broad terms, saying that its effect is to 'make application

of the rules of civil procedure in subpoena enforcement proceedings discretionary with the district

court.'") (internal citation omitted); *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979)

(upholding right of district court to enforce subpoenas in summary proceedings without the filing

of a complaint pursuant to Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), which allows a

district court to enforce a subpoena "upon application by the Commission").

Accordingly, the Commission asks the Court to promptly set an Order to Show Cause

Hearing so that Respondent's failure to comply with the Subpoena is not allowed to continue. *SEC*

*v. Marin,* 982 F.3d 1341, 1355 (11th Cir. 2020) ("SEC may invoke the aid of a district court to

enforce a subpoena, and the court may order production of records or testimony 'touching the

matter under investigation or in question.'") (quoting 15 U.S.C. § 78u(c)).

### C. The Commission's Subpoenas Satisfy All Requirements for Enforcement

"'A district court's role in a proceeding to enforce an administrative subpoena is limited.'"

*Marin*, 982 F.3d at 1352 (quoting *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)).

Under that limited review, a court should enforce an administrative subpoena if the information sought by the subpoena is reasonably relevant to an authorized investigation. *Id.*; *EEOC v. Technocrest Sys.,* 448 F.3d 1035, 1040 (8th Cir. 2006) (same).

Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. SEC,* 122 F.3d 93, 96-97 (2d Cir. 1997); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975). "All the agency must do in the first instance is make out a prima facie showing that the *Powell* criteria are met." *Marin*, 982 F.3d at 1352. Thereafter, the burden shifts to a respondent to demonstrate that enforcement would be unreasonable. *Id.; SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2d Cir.1973). However, the burden of showing unreasonableness "is not easily met" as long as the Commission's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

### i. The Commission's Purpose is Lawful

As discussed above, Congress has given the Commission broad authority to investigate whether the federal securities laws, rules, and regulations "have been or are about to be violated…" Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b)(" The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated…any provision of this chapter, [or] the rules or regulations thereunder…") Pursuant to that authority, the Commission issued the Formal Order authorizing designating officers to conduct an investigation into possible violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange

14

Act and Rule 10b-5 thereunder by ODP, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and/or other persons or entities. [*Id*., ¶ 3].

Pursuant to the authority conferred under the Formal Order, the Commission's investigative team issued the Subpoena to Charnas.  The Subpoena is within the parameters of the Commission's broad discretion to investigate:

> For the purpose of any such investigation, or any other proceeding under this chapter, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry.

15 U.S.C. §78u(b); *see also O'Brien,* 467 U.S. at 745 ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *Dresser Indus.*, 628 F.2d at 1379-80 (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena). Accordingly, the Commission's purpose in issuing the subpoena was lawful.

### ii. The Commission Seeks Relevant Information

The measure of relevance used in subpoena enforcement actions is "quite broad."  *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994).  A district court may enforce a subpoena so long as "the materials sought are *not clearly irrelevant or immaterial*."  *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978) (upholding district court's use of that language as standard for relevance) (emphasis added).  The Subpoena issued to Charnas is more than sufficient to meet this broad standard.

The Cell phone Messages as defined in Revised Request No. 3 requested for production from Charnas are highly relevant to the Commission's investigation and Revised Request No. 3 is

narrowly tailored.  This is an insider trading investigation where communications between potential tippers and tippees are critical to determination whether material nonpublic information was disseminated between individuals which gave them an unfair advantage in the market and inured to their financial benefit.[3]

### iii. Charnas Possesses Information the Commission Lacks

Charnas possesses information the Commission lacks.  The Commission does not have access to Charnas' cell phone nor does it have access to his Cell phone Messages.  While the Commission does have certain of his Cell phone Messages from other sources, the staff has reason to believe this is not the entire universe of Charnas' responsive Cell phone Messages.

### iv. The Commission Has Satisfied All Necessary Administrative Steps

The Commission issued the Subpoena in accordance with all applicable administrative requirements.  Section 19(b) of the Securities Act, 15 U.S.C. § 77s(b), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), empower the Commission to subpoena documents and testimony in the course of investigations.  Here, Drew D. Panahi, an attorney for the Division of Enforcement, designated as an officer of the Commission in the Formal Order, issued the Subpoena to Charnas. [*Id.,* ¶ 14].

### D.  <u>Respondent Cannot Show the Subpoena is Unreasonable</u>

As set forth above, the Commission has satisfied all requirements for enforcement of the Subpoena.  Accordingly, Respondent would have to demonstrate that the Subpoena is

---

[3] The SEC's investigative powers are not limited to the specific entities named in a formal order.  *Marin*, 982 F.3d at 1353, *citing O'Brien, Inc.*, 467 U.S. at 749 ("The SEC often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the law."); *RNR Enters., Inc.,* 122 F.3d at 98  (noting statutes and regulations governing the SEC do not "require that the order authorizing the investigation target by name a specific company or person suspected of violating securities laws").

unreasonable. *Brigadoon Scotch,* 480 F.2d at 1056.  Because the Commission's inquiry is legally authorized and the Commission seeks information relevant to the Investigation, Respondent's burden "is not easily met." *Id.*

The only objection Charnas has raised for refusing to provide a response to Revised Request No. 3 is the act of production privilege under the Fifth Amendment.[4]  However, it does not apply to Revised Request No. 3.

### i. Act of Production Doctrine is Limited

A defendant has the right to raise his Fifth Amendment privilege in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011,* 670 F.3d 1335 1342 (11th Cir. 2012).  However, a defendant is not permitted to make a "blanket objection to testifying or producing records."  *Sallah v. Worldwide Clearing, LLC,* 855 F.Supp.2d 1364, 1371 (S.D. Fla. 2012).  A defendant "cannot avoid compliance with [a]

---

[4] While Charnas' counsel has also asserted Charnas will invoke his Fifth Amendment rights when providing sworn testimony, counsel correctly does not dispute that Charnas must still appear for sworn testimony and personally assert his own constitutional rights.  *See, e.g., SEC v. Kimmel,* No. 19-mc-00113-CMA, Order Compelling Compliance with Administrative Subpoena, 2020 WL 2800813 at *3 (D. Colo. May 29, 2020) (*quoting SEC v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010)) ("Although 'the Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place.'"); *State of Florida ex rel. Butterworth v. Southland Corp.*, 684 F. Supp. 292, 294-95 (S.D. Fla. 1988) ("A witness must state the specific basis for objection on the record, e.g., 'Fifth Amendment privilege against self-incrimination.'  Furthermore, the witness must assert any claim of privilege on a question-by-question basis, rather than assert a blanket privilege as to all questions.").

subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." *Fisher v. United States,* 425 U.S. 391, 410 (1976).

For a disclosure to fall within the ambit of the Fifth Amendment privilege, an individual must show each of the following three things: (1) compulsion; (2) ***a testimonial communication or act***; and (3) incrimination. *Id.* at 1341 (emphasis added).

> [A]n act of production can be testimonial when that act conveys some explicit or implicit statement of fact that certain materials exist, are in the subpoenaed individual's possession or control, or are authentic." *In re Grand Jury Subpoena*, 670 F.3d at 1345–46. There are two specific ways in which an act of production is *not* testimonial. *Id.* First, when it is merely a physical act that is compelled—i.e., "where the individual is not called upon to make use of the contents of his or her mind." *Id.* And second, under the "foregone conclusion" doctrine, "an act of production is not testimonial—even if the act conveys a fact regarding existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with **'reasonable particularity'** that at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a **'foregone conclusion.'**" *Id.* at 1345-46. Further, "case law from the Supreme Court does not demand that the Government identify exactly the documents it seeks, but it does require some specificity in its requests—categorical requests for documents the Government anticipates are likely to exists simply will not suffice." *Id.* at 1347-48 (citing *United States v. Hubbell,* 530 U.S. 27, 36 (2000).

*SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.,* No. 9:20-cv-81205-RAR, 2022 WL 1288749, *2 (S.D. Fla. Apr. 29, 2022) (emphasis added).

### a. The Existence of Charnas' Cell phone Messages is a Foregone Conclusion

It is axiomatic that Charnas' Cell phone Messages are contained on his cell phone. Further, the staff has specific evidence from other sources that Charnas used his cell phone to message other individuals during the Relevant Period about ODP and Charnas' own admission that he was compiling ODP communications from his phone and email account responsive to the Subpoena. [*Id.*, ¶ 14]. The existence of responsive Cell phone Messages on Charnas' phone is a

"foregone conclusion," and therefore the privilege does not apply.  *See, e.g., Brown v. Caldwell,* No. 1:20-cv-07907-NLH-AMD, 2022 WL 2753243, *3 (D. N.J. Jul. 14, 2022) (holding act of production defense inapplicable to requirement to turn over cell phone for imaging because the parties already knew that [jail official] owned a cell phone and that it contained pertinent information); *United States v. Teeple,* 286 F.3d 1047, 1050 (8th Cir. 2002) ("[W]here the government already possesses the knowledge that would otherwise be communicated, the question is not of testimony, but of surrender" and the privilege would not apply); *United States v. Ponds,* 454 F.3d 314, 325 (D.C. Cir. 2006).[5]

### b.  Revised Request No. 3 is Specific

Revised Request No. 3 of the Subpoena limits the request specifically to only Charnas' Cell phone Messages during the Relevant Period relating to ODP.

The original Request No. 3 was as follows:

3.  All Documents (including, but not limited to, correspondence, e-mails and notes of conversations) Concerning Communications between you and any Person Concerning "ODP" or "Office Depot";

This original request incorporated the definitions of "Documents" and "Communications," which are far wider in scope that Revised Request No. 3, which is as follows:

2.  [Provide] all text messages, iMessages, and WhatsApp messages (collectively **"Cell phone Messages"**) between You and any Person Concerning "ODP" or "Office Depot." (**"Revised Subpoena Request No. 3"**)

Therefore any risk of invoking the act of production, such as searching for or producing "Documents" has been completely eliminated.  So too have "Communications" which incorporates

---

[5] Notably, and in addition, the Fifth Amendment privilege against self-incrimination does not apply to incriminating evidence that was generated prior to the demand that the evidence be produced.  *FTC v. PointBreak Media, LLC,* 343 F.Supp.3d 1282, 1293 (S.D. Fla. 2018).

"Documents" and also requests methods of communications beyond Cell phone Messages. Furthermore, the Commission is prepared to provide Charnas designated search terms. Therefore, in no way will Charnas have to "employ the contents of his mind" to provide responsive Cell phone Messages. *Sallah,* 855 F.Supp.2d at 1373 (holding that Receiver's request for defendant's communications did not trigger act of production doctrine protection under the Fifth Amendment). Revised Request No. 3 is specific, and the Commission is not currently challenging Respondent's Fifth Amendment assertion as to the remainder of the requests in the Subpoena.

### III. CONCLUSION

The Commission has satisfied all the requirements for enforcement of the Subpoena. Accordingly, for the foregoing reasons, the Commission respectfully requests this Court order Respondent to show cause why he should not comply with the Subpoena issued to him, and, after a hearing, order him to comply fully with Revised Request No. 3 of the Subpoena, lest he be held in contempt of court.

Dated: July 25, 2023

Respectfully submitted,

RUSSELL KOONIN  Digitally signed by RUSSELL KOONIN
Date: 2023.07.25 11:01:49 -04'00'

Russell Koonin
Senior Trial Counsel
Fla. Bar No. 474479
Direct Dial: (305) 982-6390
E-mail: kooninr@sec.gov

Michael J. Gonzalez
Senior Counsel
Florida Bar No. 110598
Direct Dial:  (305) 982-6318
Email: gonzalezmi@sec.gov

Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300